UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
STACY FORTHMAN,

                Plaintiff,                            Civil Action No. 0:00-cv-00000

      v.

VILLAGE OF GOWANDA,                         Jury Trial Demanded

DENNIS M. FELDMANN, and

TIMOTHY W. FITZPATRICK,

                Defendants.
------------------------------------------------------------x

## COMPLAINT

Plaintiff Stacy Forthman, by her attorney, Gregg S. Maxwell, for her complaint against the Defendants herein, respectfully alleges as follows:

### INTRODUCTION

1. This is an action for damages, arising out of the Defendant law enforcement officers' wrongful conduct, which constituted multiple violations of the Plaintiff's civil rights, depriving her of rights, privileges, and immunities guaranteed by the First, Fourth, and Fourteenth Amendments to the United States Constitution, and which are actionable pursuant to 42 U.S.C. §§1983 and 1988.

### JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), as Plaintiff's claims arise, in part, under the United States Constitution and 42 U.S.C. § 1983. The Court's has jurisdiction over state law claims pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper in this district under 28 U.S.C. § 1391(b), as the events giving rise to Plaintiff's claims occurred within the Western District of New York.

## THE PARTIES

4. Plaintiff Stacy Forthman is a resident of the Village of Gowanda, New York.

5. Defendant Village of Gowanda ("Village" or "Gowanda") is a municipal corporation duly existing by reason of and pursuant to the laws of the State of New York. The Village of Gowanda is a small community, only 1.6 square miles in size, with a population under 3,000, according to U.S. Census data.

6. Defendant Dennis M. Feldmann, sued herein individually, was at all times relevant to this action employed as an officer with the Village of Gowanda Police Department ("GPD"), holding the position of "Officer in Charge," which gave him supervisory authority over all other GPD police officers.

7. Defendant Timothy W. Fitzpatrick, sued herein individually, was at all times relevant to this action employed as an officer with the GPD.

8. Defendants Feldmann and Fitzpatrick are persons for purposes of 42 U.S.C. § 1983. The actions by these Defendants of which Plaintiff complains were executed under the color of state law pursuant to the Defendants' authority and capacity as officers of the GPD and within the scope of their employment.

9. Upon information and belief, by charter or by rule, the Mayor of the Village of Gowanda is also designated as the Commissioner of the Village of Gowanda Police Department. At all times relevant to this action, the position of Mayor and Commissioner of Police in the Village of Gowanda was occupied by David Smith.

## FACTUAL ALLEGATIONS

10. In late August 2020, Plaintiff Stacy Forthman went to the GPD office and complained to Defendant Feldmann that she had been assaulted by a male acquaintance in a parking area outside of a retail store in the Village of Gowanda.

11. During that conversation, Plaintiff felt very uncomfortable and described Defendant Feldmann as condescending, rude, sexist, and uninterested in her complaint.

12. Plaintiff thereafter contacted Mayor and Police Commissioner David Smith with concerns about the lack of professionalism demonstrated by the GPD.

13. On September 3, 2020, Defendant Fitzpatrick and another GPD officer visited Plaintiff at her home, accusing her of intentionally damaging property belonging to the above-referenced acquaintance, and attempted to intimidate her into making an admission.

14. Shortly thereafter, Plaintiff learned that the acquaintance had a friendly relationship with certain GPD officers and that he had been making disparaging statements about the Plaintiff to discredit her with the officers.

15. Having received no update from GPD regarding her assault complaint, on September 13, 2020, Plaintiff sought assistance from the New York State Police at its barracks in Collins, New York.

16. At that time, one or more GPD officers arrived at the State Police barracks and spoke with Plaintiff, telling her only that they had reviewed video surveillance from a retail store at the location of the assault and had not observed an assault on the video. On that basis, GPD would take no further action with respect to her complaint.

17. Plaintiff asked GPD officers to view the referenced video footage herself, but her request was denied. Instead, GPD told the Plaintiff to take up her request with the manager of the store that originated the surveillance video.

18. When Plaintiff contacted the store manager the following day, he stated that the store's video had been turned over to GPD. Plaintiff's subsequent requests for said video from GPD, including *via* a FOIL request, were denied on the basis that GPD did not have the video.

19. FOIL documents obtained in 2021 show that GPD prepared no contemporaneous record of Plaintiff's assault complaint and no contemporaneous report reflecting an investigation, including the review of video footage by any GPD officer.

20. Plaintiff subsequently visited Mayor / Police Commissioner David Smith to make further inquiries. In her presence, Mayor Smith called Defendant Feldmann on the telephone and asked him what GPD was doing with respect to Ms. Forthman's complaint.

21. After the events of September 13, 2020, Defendants Feldmann and Fitzpatrick embarked on a campaign to make Plaintiff's life miserable, in the course of which Fitzpatrick conducted an unlawful stop and arrest of Plaintiff – which gives rise to this action.

22. The quest to "silence" Ms. Forthman began with Defendant Feldmann calling Plaintiff's husband on his cell phone and summoning him to the police station, at which point Feldmann told Mr. Forthman that Plaintiff was having sex with various men and "hanging out" with men at her workplace (the Palm Gardens Motel and Lounge in Gowanda).

23. Then, on October 23, 2020, a GPD officer directed Plaintiff to report to the police station, stating that Defendant Feldmann instructed him to charge her with filing a false police report in relation to her assault claim. Plaintiff went to the station, and the officer issued her an appearance ticket charging her with the aforementioned offense.

24. Plaintiff retained counsel and appeared in court, as summoned, on November 23, 2020, at which time the charge was disposed of by way of an ACD.

25. Defendants subjected Plaintiff to continual surveillance at home, at work, and out in the community, making their presence known to her at every opportunity. Defendants also successfully encouraged other law enforcement agencies to do the same, as GPD frequently interacts with New York State Troopers and Erie and Cattaraugus County Sheriffs.

26. Defendants and their cohorts subjected Plaintiff to frivolous traffic stops, issued meritless Vehicle and Traffic Law citations, and confronted her in person with questions and allegations on matters unrelated to her.

27. Defendant Fitzpatrick independently monitored Plaintiff's movements in her vehicle and as a pedestrian as she went about her daily affairs. He prepared numerous observational reports as part of police business but outside of any police calls or complaints and unrelated to any identified investigation. Indeed, Officer Fitzpatrick was developing a potential "case" against Plaintiff on the pretext that she was following or monitoring GPD officers.

28. Then, on the morning of December 13, 2020, without any probable cause, Defendant Fitzpatrick executed a traffic stop of Ms. Forthman as she was doing routine errands around the Village of Gowanda.

29. Defendant Fitzpatrick pulled Plaintiff over on a side street in close proximity to the Forthman's home. He waited in his patrol vehicle for about 20 minutes before approaching Plaintiff's vehicle, in which she remained seated.

30. Plaintiff's husband observed the vehicles and approached to inquire about what was happening. Defendant Fitzpatrick proceeded to walk Mr. Forthman to the back of the patrol

car and engage him in conversation, while Plaintiff remained in her vehicle, after which Mr. Forthman returned home.

31.     When Plaintiff asked Defendant Fitzpatrick the reason for the stop, he was unable to articulate a basis on which to conduct the traffic stop.

32.     Subsequently, Defendant Fitzpatrick manufactured a reason for the stop, falsely claiming that Plaintiff's license plates were obscured.

33.     Defendant Fitzpatrick asked Plaintiff for her driver's license, and when she did not comply immediately, he threatened to charge her with obstructing governmental administration.

34.     Ms. Forthman turned over her driver's license. Nevertheless, Defendant Fitzpatrick ordered her out of the vehicle, indicating that he was placing her under arrest. She stated that she would not exit the vehicle until one or more additional officers were present to witness the arrest.

35.     Without probable cause for an arrest, Defendant Fitzpatrick reached in and grabbed Plaintiff (who stands 5'2" and weighs approximately 100 lbs.) by the arms and ripped her from her vehicle.

36.     Without any justifiable reason for the use of such force, Defendant Fitzpatrick jabbed the Plaintiff in the back multiple times with his taser, slammed her against the vehicle using the force of his body, ripped her cell phone from her hand, and handcuffed her tightly.

37.     Plaintiff had been recording the traffic stop with her mobile phone. When she regained possession of it later, she found that the video had been deleted.

38. Defendant Fitzpatrick transported Plaintiff in the back of his squad car to the police station, where she was processed and later released, after having been unlawfully detained for about two hours.

39. At no time did Defendant Fitzpatrick read Miranda warnings to the Plaintiff. Despite the persistence of the COVID-19 pandemic throughout the country, Defendant Fitzpatrick refused Plaintiff's request for a mask. He denied her the use of a bathroom, despite numerous requests. He refused to allow Plaintiff to call her attorney. Additionally, the plaintiff was not provided summonses for all of the charges asserted by GPD. She received them only at the time of her court appearance.

40. For a variety of reasons, including the COVID-19 pandemic, court proceedings relative to the above arrest did not occur until two years later, on December 13, 2022.

41. On that date, Plaintiff appeared with her attorney. All charges were disposed of by way of a one-year ACD, which expired on December 13, 2023.

42. During that two-year interval and after, Defendants and their law enforcement cohorts continued their campaign of retribution and intimidation of the Plaintiff, one objective of which was to "silence" her.

43. Among other things, Defendants continued to subject Plaintiff to surveillance at home, at work, and out in the community, and continued successfully to encourage other law enforcement agencies to do the same, including New York State Troopers and Erie and Cattaraugus County Sheriff's deputies.

44. Plaintiff continued to assert her rights and continued to voice her objections personally and through counsel to the acts and omissions of the Defendants and their cohorts.

45. By way of example, GPD officers would frequently drive by Plaintiff's home and place of work, shine spotlights into the windows of Plaintiff's home, follow her while she was driving, and make their presence known at the Palm Gardens Lounge in order to discourage patronage there and thus negatively impact Plaintiff's income from bartending.

46. On one occasion, in May 2021, Plaintiff's daughter (a high school senior), who had been engaged in schoolwork on the front porch of the Forthman home, called Plaintiff at work in extreme distress. A GPD officer was continuously driving past the home and staring at the daughter. Plaintiff later examined her home surveillance video and counted at least 52 times that the officer drove slowly past the house staring at her daughter that afternoon.

47. Plaintiff contacted Mayor Smith in regard to that incident but received no response. Plaintiff's attorney also contacted Mayor Smith (as he had numerous times already) and conveyed the information and complaints gathered by Plaintiff with respect to the activities of Defendants and other GPD officers.

48. Plaintiff documented many such occurrences by video and sound recordings, having been compelled to install cameras in her vehicle and at her home, through which she gathered many hours of evidence – in addition to what she collected *via* her mobile device.

## FIRST CAUSE OF ACTION

**(Violation of the First Amendment)**

49. Plaintiff repeats and re-alleges all of the above allegations.

50. The First Amendment to the Constitution of the United States guarantees the right of free speech to its citizens, particularly with respect to matters of health, safety, political activity, government, policy, and the redress of wrongs in the public realm.

51. The conduct and policies carried out by the Defendants prevented or inhibited Plaintiff from speaking out about matters of public concern and thus constituted a violation of Plaintiff's right to free speech in violation of the First Amendment.

52. As a direct and proximate result of such unlawful conduct and policies, as exemplified by the allegations set forth above, the Plaintiff has been damaged. Plaintiff's damages include loss of employment, loss of income, damaged reputation, physical and psychological injuries of both an acute and permanent nature requiring ongoing care from health professionals, lawful compensation for which is due to the Plaintiff in an amount which exceeds the jurisdictional threshold of the Court, the specific amount to be proven at trial, along with attorneys fees, costs and disbursements.

## SECOND CAUSE OF ACTION

**(Violation of the First Amendment)**

53. Plaintiff repeats and realleges all of the above allegations.

54. The right to speak out and to seek to hold public officials and officers accountable for the manner in which they execute their duties, including seeking redress through the court system, is an activity protected by the First Amendment, which makes retaliation by such officials and officers against citizens for exercising their First Amendment rights unlawful.

55. Defendants engaged individually and collectively in a course of conduct against the Plaintiff of a retaliatory nature, in direct response to Plaintiff's exercise of her First Amendment rights, which included using the authority of the Village of Gowanda and the Gowanda Police Department to bring charges and effect prosecutions against the Plaintiff on frivolous and baseless pretenses.

56. As a direct and proximate result of such retaliation by the Defendants, the Plaintiff has been damaged. Plaintiff's damages include loss of employment, loss of income, damaged reputation, physical and psychological injuries of both an acute and permanent nature requiring ongoing care from health professionals, lawful compensation for which is due to the Plaintiff in an amount which exceeds the jurisdictional threshold of the Court, the specific amount to be proven at trial.

57. Plaintiff is entitled to attorneys' fees pursuant to 42 U.S.C. § 1988, with prejudgment interest and such costs as allowable by federal law.

### THIRD CAUSE OF ACTION

**(False Arrest in Violation of the Fourth and Fourteenth Amendments)**

58. Plaintiff repeats and realleges all of the above allegations.

59. The Fourth Amendment of the Constitution of the United States protects citizens against unreasonable searches and seizures by law enforcement officers and prohibits the arrest of its citizens in the absence of probable cause to believe that a crime has been committed.

60. The Fourteenth Amendment of the Constitution of the United States protects citizens against the arbitrary deprivation of life, liberty, or property by the State and by those acting under color of law and prohibits the arrest of its citizens in the absence of probable cause to believe that a crime has been committed.

61. Defendant Fitzpatrick arrested Stacy Forthman without probable cause. Defendant Feldmann ordered that Stacy Forthman be charged with a crime by one of his subordinates without probable cause. In both instances, the lack of probable cause to arrest and/or charge Plaintiff would have been evident to any reasonable person based on the facts and circumstances prevailing at the time, as Defendants had no reason to believe that she had broken any law.

62.     By arresting and/or charging Plaintiff without probable cause, Defendants Feldman and Fitzpatrick violated Plaintiff's Fourth and Fourteenth Amendment rights while acting under color of state law in violation of 42 U.S.C. § 1983.

63.     Defendant Village of Gowanda is vicariously liable for Defendants' actions, as they were carried out pursuant to the authority vested in them as law enforcement officers and in the scope of their employment.

64.     Defendants reasonably should have known that their actions under the circumstances prevailing would violate Plaintiff's constitutional rights.

65.     As a direct and proximate result of said false arrest and/or charge, Ms. Forthman suffered actual physical, emotional, and economic harm, including but not limited to the loss of liberty, inconvenience, humiliation, degradation, damage to reputation, medical expenses, legal fees, criminal defense costs, mental anguish, post-traumatic stress, loss of the ability to enjoy life, and other noneconomic damages.

66.     Plaintiff is entitled to attorneys' fees pursuant to 42 U.S.C. § 1988, with prejudgment interest and such costs as allowable by federal law.

## FOURTH CAUSE OF ACTION

**(Malicious Prosecution)**

67.     Plaintiff repeats and realleges all of the above allegations.

68.     The conduct of the GPD Defendants constituted malicious prosecution, because it was carried out in pursuit of an unlawful personal vendetta and the charges asserted lacked a sufficient factual basis.

69.     In furtherance of Defendants' unlawful agenda, Defendants destroyed, concealed, and manipulated evidence favorable to the Plaintiff.

70.     As a direct and proximate result of this malicious prosecution, Plaintiff suffered actual physical, emotional, and economic harm, as elaborated throughout, and is entitled to compensatory damages which exceed the jurisdictional monetary threshold of the Court, the specific amount to be proven at trial, plus reasonable attorneys' fees, costs and disbursements.

## FIFTH CAUSE OF ACTION

### (New York State Constitutional Tort)

71.     Plaintiff repeats and realleges all of the above allegations.

72.     The policies and conduct of the Defendants deprived the Plaintiff of her right to equal protection under law, in violation of Article I, Section 11, of the New York Constitution.

73.     As a direct and proximate result of the unlawful policies and intentional acts of the defendants in furtherance of personal or political vendettas described herein, Plaintiff suffered actual physical, emotional, and economic harm, as elaborated throughout, and is entitled to compensatory damages which exceed the jurisdictional monetary threshold of the Court, the specific amount to be proven at trial, plus reasonable attorneys' fees, costs and disbursements.

74.     The Defendants acted willfully, maliciously and/or with reckless disregard of the consequences of their actions. Accordingly, Plaintiff is entitled to an award of punitive damages.

## SIXTH CAUSE OF ACTION

### (State Law – False Arrest) (As to Defendant Fitzpatrick)

75.     Plaintiff repeats and realleges all of the above allegations.

76.     Plaintiff's arrest was unlawful, because there was no probable cause for the arrest. Defendant had no reasonable basis to believe that she had violated any state law or municipal code.

77.     The facts and circumstances within Defendant's knowledge during his interaction with Plaintiff would not have caused a reasonable person to conclude that she had committed or was in the process of committing any offense.

78.     As a direct and proximate result of this false arrest, Plaintiff suffered actual physical, emotional, and economic harm as elaborated throughout, and is entitled to compensatory damages which exceed the jurisdictional monetary threshold of the Court, the specific amount to be proven at trial, plus reasonable attorneys' fees, costs and disbursements.

## SEVENTH CAUSE OF ACTION

### (State Law – False Imprisonment)

79.     Plaintiff repeats and realleges all of the above allegations.

80.     Plaintiff was arrested, transported to the GPD, and held there without probable cause for her arrest. Her detention was therefore unlawful.

81.     Defendants caused this unlawful detention by arresting and detaining her without probable cause.

82.     As a direct and proximate result of this unlawful detention, Plaintiff suffered actual physical, emotional, and economic harm as elaborated throughout, and is entitled to compensatory damages which exceed the jurisdictional monetary threshold of the Court, the specific amount to be proven at trial, plus reasonable attorneys' fees, costs and disbursements.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against each of the Defendants, jointly and severally, and award compensatory and punitive damages, the specific amounts to be proved at trial, plus reasonable attorneys' fees,

costs and disbursements, along with such other and further relief that the Court deems just and proper.

Dated: Buffalo, New York
　　　　December 13, 2024

Respectfully submitted,
Law Office of Gregg S. Maxwell

By: _____

Gregg S. Maxwell
Attorney for Plaintiff Stacy Forthman
302 Old Oak Post Road
East Amherst, NY 14051
(716) 480-2882
greggsmaxwell@gmail.com